J-S13008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAJON ANTHONY SMITH, | |
| Appellant | No. 375 WDA 2014 |

Appeal from the Judgment of Sentence Entered November 21, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016741-2012

BEFORE:  BENDER, P.J.E., MUNDY, J., and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 1, 2015**

Appellant, Dajon Anthony Smith, appeals from the judgment of sentence of 30-60 months' incarceration and a consecutive year of probation, following his conviction for carrying a firearm without a license. Appellant claims the trial court erred when it denied his motion to suppress the seized firearm, and that the sentence imposed constituted an abuse of the court's discretion.  After careful review, we affirm.

The trial court summarized the facts relevant to this appeal as follows:

> On November 11, 2012, Officer James Goss of the City of McKeesport Police Department, a[n] [officer for] ten (10) year[s] …, was patrolling in a marked patrol unit … within the [City of McKeesport] when he observed [Appellant] and a second male. This area of the City of McKeesport is a very high crime area, with the officer[`s] having handled five (5) homicides within a [nearby] city block.  Officer Goss had just turned onto 13th Street when he noticed [Appellant] and the second individual walking towards him.  As his cruiser passed the men, he noticed them looking "very nervously" toward him.   He then saw

[Appellant] reach towards the center of the waistband of his pants with both hands as if to conceal something. Officer Goss recognized the individual reaching for his waistband as [Appellant] from prior encounters with him. The men continued to look at Officer Goss nervously even after he had passed them.

Officer Goss made a right turn onto Jenny Lind Street, and then turned his car around to initiate contact with [Appellant]. He contacted a fellow officer, Officer Matthews, for back-up support as he proceeded back towards [Appellant]. Officer Goss parked his vehicle, exited it and began walking toward [Appellant] and his companion, asking them to remove their hands from their pockets and place them behind their heads. Officer Goss requested that [Appellant] and his companion show their hands for officer safety. He believed that [Appellant] might be concealing a firearm due to a prior experience with him. As he was requesting to see their hands, Officer Matthews was approaching the two (2) men from behind, on foot. [Appellant] looked behind him nervously, toward Officer Matthews, who was in uniform and driving a marked police unit. [Appellant] then fled, with Officer Matthews giving chase.

[Appellant] fled towards the Harrison Village area of the City of McKeesport, with Officer Matthews, a seven (7) year police veteran, giving chase. Officer Matthews noticed that [Appellant] was holding the right side of his pants['] waistband area as he fled. As [Appellant] ran between Buildings One (1) and Two (2) in Harrison Village, Officer Matthews saw him throw a silver firearm from his waistband. Officer Matthews immediately stopped his pursuit and recovered a firearm from a dumpster. It should be noted that there was no one else running near [Appellant] when the officer observed the firearm being thrown.

Trial Court Opinion (TCO), 10/1/2014, 2-4.

When subsequently arrested, Appellant was charged by criminal information with carrying an unlicensed firearm, 18 Pa.C.S. § 6106, and possession of a firearm with an altered manufacturer's number, 18 Pa.C.S. § 6110.2. Appellant filed a motion to suppress the seized firearm on May 16,

2013. That motion was denied following a suppression hearing held on June 19, 2013.

Appellant proceeded to a jury trial on August 22, 2013. On August 23, 2013, the jury convicted Appellant of carrying an unlicensed firearm, but acquitted him of possession of a firearm with an altered manufacturer's number. On November 21, 2013, the trial court sentenced Appellant to 30-60 months' incarceration and a consecutive term of probation of one year.

Appellant filed a timely post-sentence motion seeking reconsideration of sentence, which was considered by the trial court at a hearing held on February 7, 2014. The trial court denied Appellant's post-sentence motion by order dated February 10, 2014. Appellant then filed a timely notice of appeal on March 7, 2014, and a timely Pa.R.A.P. 1925(b) statement of errors complained of on appeal on April 8, 2014. The trial court issued its Rule 1925(a) opinion on October 1, 2014.

Appellant now presents the following questions for our review, which we will address *ad seriatum*:

> I. Did the [trial] court err by denying [Appellant]'s motion to suppress [the] evidence obtained from an investigatory detention conducted without reasonable suspicion?
>
> II. Did the [trial] court abuse its discretion by imposing a manifestly unreasonable and excessive sentence which failed to account for significant mitigating evidence and [Appellant]'s extraordinary rehabilitative needs?

Appellant's Brief, at 5 (unnecessary capitalization omitted).

Appellant's first claim concerns the denial of his suppression motion.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012) (quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa. Super. 2012)).

Appellant contends that the trial court erred when it determined that Appellant was subjected to a mere encounter, rather than an investigative detention.

Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. *Commonwealth v. Smith*, 575 Pa. 203, 836 A.2d 5, 10 (2003) (citation omitted). Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. *Id.* (citations omitted). The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause. *Id.* (citations omitted).

In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000) (citations omitted). We are bound by the suppression court's factual findings, if supported by the record; however, the question presented—whether a seizure occurred—is a pure question of law subject to plenary review. *See Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010) (citations omitted).

The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. *Strickler*, [757 A.2d] at 890 (citation omitted). Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and this Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. *Id.*, at 890 n.8 (citation omitted). "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to 'leave' will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." *Michigan v. Chesternut*, 486 U.S. 567, 573–74, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) (citations omitted).

*Commonwealth v. Lyles*, 97 A.3d 298, 302-03 (Pa. 2014).

Here, the trial court concluded that Appellant was not seized when he was told to remove his hands from his pockets and to place them behind his head. In reaching this conclusion, the court considered several factors. First, the court considered Officer Goss' "intention at the time of his interaction with [Appellant] to engage in a 'mere encounter.'" TCO, at 5. Second, Officer Goss did not draw or otherwise brandish his firearm when he approached and spoke to Appellant. *Id.* at 5-6. Third, Officer Goss neither ordered Appellant to stop, nor advised Appellant that he was not free to leave. *Id.* at 6. Fourth, Officer Goss "requested that [Appellant] reveal his

- 5 -

hands for purposes of officer safety." *Id.*[1] Finally, the court found that Officer Goss had not used "commanding language, yelled or raised his voice." *Id.* Instead, Officer Goss had said "please" when he asked Appellant to reveal his hands. *Id.* Based on these facts, the trial court concluded that Officer Goss' interaction with Appellant was a mere encounter and, thus, did not rise to the level of an investigative detention. We disagree.

First, and foremost, Officer Goss did not merely ask Appellant to reveal his hands. The record demonstrates that Officer Goss testified that he told Appellant, "Can you please take your hands out of your pockets," *and* "*place your hands behind your head*." N.T. Suppression, 6/19/13, at 10 (emphasis added).[2] This Court has previously recognized that a request by a police officer for a defendant to remove his or her hands from his or her pockets,

_____

[1] Relatedly, the trial court found that this request was reasonable because of Officer Goss' prior interactions with Appellant, which had involved Appellant's possession of a firearm. *Id.*

[2] At another time during the suppression hearing, Officer Goss claimed that he told Appellant: "Take your hands out of your pocket. Put your hands out so I can see them." *Id.* at 20. Notably, this second version of Officer Goss' statement clearly takes a more commanding tone than the first version, although the order to place Appellant's hands behind his head is absent. Regardless, the trial court chose to credit the first version of Officer Goss' 'request' in its recitation of the facts, and the court did not mention the second version in its analysis of this matter. Accordingly, we rely on the first version for our own analysis as well. *See McAdoo*, 46 A.3d at 783 ("Where the suppression court's factual findings are supported by the record, we are bound by these findings[.]"); *accord Lyles*, 97 A.3d at 302.

for officer safety purposes, does not automatically elevate a mere encounter to an investigative detention. **See Commonwealth v. Coleman**, 19 A.3d 1111, 1117 (Pa. Super. 2011) (citing **Commonwealth v. Carter**, 779 A.2d 591, 594 (Pa. Super. 2001), and **Commonwealth v. Hall**, 713 A.2d 650, 653 (Pa. Super. 1998), *rev'd on other grounds*, 771 A.2d 1232 (Pa. 2001)). However, this case is clearly distinguishable because Officer Goss asked Appellant to put his hands behind his head. Regardless of the officer's use of the word "please," no reasonable person "would have felt free to leave or otherwise terminate the encounter" when confronted with such a request from a uniformed police officer. **Lyles**, 97 A.3d at 303. Removing one's hands from one's pockets is a minor intrusion on one's liberty when compared to the request to assume an inherently submissive body position. Moreover, Officer Goss made this 'request' at the beginning of the encounter. This is not a case, therefore, where during the course of a mere encounter, a defendant places his hands in his pockets, thus giving rise to concerns for officer safety that were not already present. Here, Officer Goss initiated the contact with Appellant with the request that Appellant assume a submissive body position.

Second, Officer Goss was not the only police officer involved in this interaction. Officer Goss had called for backup despite his purported intention to engage in a mere encounter. When Officer Goss 'asked' Appellant to reveal his hands and place them behind his head, Officer Matthews was approaching Appellant from behind. And, according to Officer

Goss, Appellant was aware that Officer Matthews was approaching him from behind when this occurred.[3]

Third, Officer Goss' subjective intent to engage in a mere encounter, contrary to the trial court's analysis, was not a relevant factor. While courts apply a totality-of-the-circumstances test to the question of whether an individual is seized, that inquiry is directed toward the question of "whether a reasonable person would have felt free to leave or otherwise terminate the encounter." *Lyles*, 97 A.3d at 303. Officer Goss' subjective intent is not at all relevant to this inquiry, although his intent may have been relevant for some other purpose (such as to determine his credibility).

We find *Commonwealth v. Martinez*, 588 A.2d 513 (Pa. Super. 1991), to be instructive in this case. In *Martinez*, two police officers, while driving in their unmarked police vehicle, pulled up alongside the defendant and asked her "would she come over here, turn around and take her hands out of the jacket, and put her hands on the car." *Id.* at 515. The officers then exited the vehicle and approached the defendant from different sides. *Id.* Given these circumstances, the *Martinez* Court held that she "had been 'seized' for Fourth Amendment purposes." *Id.*

_____

[3] Officer Goss testified that just prior to taking flight, Appellant had looked back at Officer Matthews "nervously." N.T., 6/19/13, at 11.

Similarly, given the totality of the circumstances in this case, we conclude that Officer Goss did not engage in a mere encounter. Appellant was seized when Officer Goss asked that Appellant place his hands behind his head while Officer Matthews approached Appellant from behind. No reasonable person would have felt free to walk away from Officer Goss and Officer Matthews in such circumstances. Thus, we conclude that the trial court erred when it determined that Appellant was only subjected to a mere encounter before he fled. However, our inquiry is not at an end. We must next consider whether Officer Goss possessed reasonable suspicion to subject Appellant to an investigatory detention.[4]

_____

[4] In his Rule 1925(b) statement, Appellant preserved the question of whether this seizure arose to the level of a custodial detention, an interaction that would have required probable cause. However, Appellant's brief is exclusively dedicated to the argument that the police lacked reasonable suspicion to conduct an investigatory detention. **See** Appellant's Brief, at 12 ("[Appellant] was subjected to an investigatory detention, and not simply a 'mere encounter,' when a uniformed police officer stopped him on the street, ordered him to place his hands on his head, and called for back-up to assist with securing the scene. This stop was conducted without reasonable suspicion…."). Accordingly, we deem waived the question of whether Appellant was subjected to a custodial detention. Nevertheless, if Appellant had preserved that claim for our review, we would have found that it lacked merit. The totality of the circumstances present in this case establish that Appellant was not subjected to the functional equivalent of an arrest and, therefore, that probable cause was not required to justify the seizure that occurred, because: 1) the duration of the investigative detention was extremely limited in due to Appellant's immediate flight afterwards; 2) Appellant was never handcuffed or placed into a police vehicle; and 3) neither Officer Goss nor Officer Matthews had drawn their weapons. **Commonwealth v. Douglass**, 539 A.2d 412, 418 (Pa. Super. 1988) ("A 'custodial detention' must be supported by probable cause; it is deemed to
*(Footnote Continued Next Page)*

In the seminal case of **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court indicated that police may stop and frisk a person where they had a reasonable suspicion that criminal activity is afoot. In order to determine whether the police had a reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. **United States v. Cortez**, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." **Id.** at 417–18, 101 S.Ct. 690.

**In re D.M.**, 781 A.2d 1161, 1163 (Pa. 2001).

The trial court relies on the fact that Appellant engaged in "unprovoked" flight from police in a high crime area to conclude that the police had reasonable suspicion to engage in a **Terry** stop.[5] TCO, at 8. We disagree. As noted above, Appellant was seized in the moment before he fled. As such, it is inappropriate to consider whether his flight from police was a factor upon which a finding of reasonable suspicion could be based.

_(Footnote Continued)_ ————————————

arise when the conditions and/or duration of an investigating detention become so coercive as to be the functional equivalent of arrest.").

[5] In **D.M.**, our Supreme Court held that reasonable suspicion can be found when a defendant engages in flight from police in a high crime area. **Id.** at 1164 (relying on **Illinois v. Wardlow**, 528 U.S. 119 (2000)). Although the **D.M.** Court employed the term "unprovoked" to describe D.M.'s flight (as did the **Wardlow** Court to describe Wardlow's flight), the **D.M.** Court made no attempt to distinguish between 'provoked' and 'unprovoked' flight. Indeed, usage of the term, although ubiquitous, is confusing, if not merely superfluous. Clearly, as was the case both in **D.M.** and **Wardlow**, it is flight _provoked_ by police that is the relevant factor that reasonably increases the degree of suspicion presented by such flight, because it suggests that the fleeing suspect is avoiding police because he or she was engaging in, or had been engaging in, criminal behavior.

However, several factors lead us to conclude that the police possessed reasonable suspicion to believe that Appellant was engaged in criminal activity prior to the seizure that occurred. First, Officer Goss testified that his encounter with Appellant occurred in a high crime area. Appellant does not dispute this factor, other than to note that his presence in a high crime area, by itself, is not enough to give rise to a reasonable suspicion that criminal activity is afoot. Appellant is correct in this regard. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *In re M.D.*, 781 A.2d 192, 199 (Pa. Super. 2001) (citing *Brown v. Texas*, 443 U.S. 47 (1979)). Nevertheless, "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Id.*

Second, we also consider Appellant's suspicious behavior as a circumstance contributing to Officer Goss' suspicion of his criminal activity. According to Officer Goss, when he drove past Appellant and his companion, Appellant, using both hands, reached toward his waistband. Officer Goss recognized this behavior as being consistent with an attempt to conceal a firearm. Moreover, this was done while Appellant gave a nervous look to the officer. We agree with Appellant that by itself, this nervous, secretive behavior did not demonstrate that Appellant was engaged in criminal behavior. However, there is no doubt that such behavior has been previously relied upon by the courts, among other factors, to provide a basis

- 11 -

for a finding of reasonable suspicion. *See Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super. 2009) ("Since the criminal activity in question involved possession of a firearm and since [the a]ppellant's act of patting his waistband bolstered [the police officer's] reasonable belief that [the a]ppellant actually had a gun in his pants, [the officer] was constitutionally permitted to conduct a patdown search of Appellant's waistband.")

Third, we consider Officer Goss' specific knowledge regarding Appellant, which the officer developed during their prior encounter; Officer Goss knew Appellant possessed a firearm during that prior encounter. Like the previous two factors, this was not enough, considered in isolation, to constitute reasonable suspicion that Appellant was engaged in criminal activity. However, this circumstance is the keystone of the arch of reasonable suspicion that can be constructed in this case. It is because Officer Goss knew of Appellant's prior illegal possession of firearms that his observation of Appellant's nervous, secretive behavior in a high crime area gave rise to more than just a hunch of ongoing criminal activity.

Collectively, these factors allowed Officer Goss to reasonably suspect that Appellant was engaged in a specific criminal behavior – the illegal possession, or secretion, of a firearm. Appellant, known to Officer Goss to have illegally possessed a firearm in the past, and in reaction to the presence of police, engaged in nervous behavior that was consistent with the secretion of a firearm in his waistband while walking through a high crime neighborhood. We conclude that, in these circumstances, Officer Goss

- 12 -

possessed a reasonable suspicion that Appellant was engaged in criminal activity. We do so based on the attendant circumstances and Officer Goss' particularized observations at the time he effectuated the aforementioned investigative detention, although no single factor or circumstance, considered alone, could have justified a **Terry** stop. Consequently, although we conclude that the trial court erred in its legal analysis, we affirm its decision to deny Appellant's motion to suppress the seized firearm. "[E]ven if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence." **Commonwealth v. Dixon**, 997 A.2d 368, 373 (Pa. Super. 2010) (quoting **Commonwealth v. Wilson**, 927 A.2d 279, 284 (Pa. Super. 2007)). Accordingly, Appellant's first claim lacks merit.

Next, Appellant posits that the trial court abused its discretion in sentencing him to 30-60 months' incarceration.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

- 13 -

> *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super.2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13.
>
> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. *Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

In the present case, Appellant filed a timely notice of appeal, preserved his claim in a post-sentence motion, and provided this Court with a Rule 2119(f) statement alleging the presence of a substantial question for our review. Furthermore, we conclude that Appellant presents a plausible argument that a substantial question exists. Specifically, he alleges that his sentence was manifestly excessive in light of the fact that the trial court failed to consider his rehabilitative needs. As conceded by the Commonwealth, this claim presents a substantial question for our review. *See Commonwealth v. Downing*, 990 A.2d 788, 793 (Pa. Super. 2010)

(holding that the defendant's assertion that the trial court failed to consider his rehabilitative needs at sentencing raised a substantial question). As such, we proceed to consider the merits of Appellant's discretionary aspects of sentencing claim.

Appellant contends that the trial court's sentence was manifestly excessive, despite falling both within the statutory limits and inside the standard range of the sentencing guidelines, because the trial court failed to consider his rehabilitative needs. Specifically, he argues that his young age, troubled youth, non-violent criminal history, and status as a new parent should have provided for a more lenient sentence than the one imposed. Furthermore, Appellant contends that the trial court erred when it refused to consider the fact that Appellant had not used the seized firearm in any other criminal endeavor.[6]

In reviewing Appellant's sentencing claim(s), we adhere to the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment.

_____

[6] This latter contention arguably fails to present a substantial question for our review because the trial court's refusal "to weigh the proposed mitigating factors as Appellant wished, absent more, does not raise a substantial question." **Commonwealth v. Moury**, 992 A.2d 162, 175 (Pa. Super. 2010). However, we review this claim because it also plausibly relates to Appellant's broader allegation that the court failed to consider his rehabilitative needs as one factor among many.

Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch*, 936 A.2d 515, 517–18 (Pa. Super. 2007) (quoting *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006)). We are also guided by statutory considerations:

**(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**(d) Review of record.--**In reviewing the record the appellate court shall have regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(c) and (d).

The trial court defends the sentence imposed, noting that it "had the benefit of a thorough presentence report and listened carefully to the statements of [Appellant] and the mother of [Appellant]'s son prior to sentencing [Appellant]." TCO, at 10. Thus, we reject Appellant's claim that the trial court failed to consider his age, personal history, and criminal history in crafting his sentence. *See Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004), *aff'd*, 891 A.2d 1265 (Pa. 2006) ("[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). Furthermore, despite his nonviolent criminal history, the court considered that Appellant pled guilty to the exact same offense just six months prior to the charges filed in this case, and had committed the instant offense just two months after being released from prison for that prior offense. The court also considered "the serious nature of the crime[] and [Appellant's] lack of remorse...." TCO, at 11. While this Court may have weighed these circumstances differently, we cannot discern any abuse of discretion in the trial court's consideration of these factors. Specifically, we ascertain no evidence of "partiality, prejudice, bias or ill will" in the trial court's imposition of sentence, nor does the court's weighing of factors represent a "*manifestly* unreasonable decision." *Hoch*, 936 A.2d at 518 (emphasis added).

Appellant also complains that the trial court erred when it declined to consider the fact that he did not commit any other crime with the firearm as a mitigating factor in this case. Although we are inclined to agree with Appellant that this is a mitigating factor, it is not a particularly substantial one. It is only nominally mitigating because Appellant is in a class of defendants whose convictions under 18 Pa.C.S. § 6106 are often accompanied by other crimes involving the use, or the threat to use, the firearm that provided the basis for the possessory offense. If, in those cases, the use of the firearm is logically considered as an aggravating sentencing factor, then certainly the opposite condition or circumstance should be considered, at least to some extent, as a mitigating factor. Nevertheless, to afford Appellant significant credit for not committing additional crimes with his firearm is an absurdity in and of itself. Thus, although we acknowledge that the court likely erred in this regard, we do not conclude that such error rendered the sentence imposed manifestly unreasonable.[7] At worst, the court's refusal to acknowledge the mitigating nature of that fact was "merely … an error in judgment." **Hoch**, 936 A.2d at 517–18.

_____

[7] Neither Appellant, the Commonwealth, nor the trial court has provided any legal support regarding whether the failure to use a weapon in another crime is a mitigating factor for a possessory offense related to that same weapon. However, because we conclude that Appellant's discretionary aspects of sentencing claim does not turn on that legal question, we decline to expressly rule on it at this time.

Finally, Appellant was sentenced in the standard range of the sentencing guidelines. Thus, this Court can only vacate his sentence if the guidelines were applied erroneously or that application of the guidelines was "clearly unreasonable." 42 Pa.C.S. § 9781(c)(1) and (2). Appellant makes no argument that the guidelines were erroneously applied or that application of the guidelines in this case was clearly unreasonable. Consequently, for this and all of the aforementioned reasons, we conclude that the trial court did not abuse its discretion in sentencing Appellant to 30-60 months' incarceration for his offense.

Judgment of sentence **affirmed**.

Judge Mundy joins the memorandum.

Judge Stabile files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/2015