421 A.2d 1116

**COMMONWEALTH of Pennsylvania**

v.

**Dale E. FIORE, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1979.

Filed Sept. 26, 1980.

Petition for Allowance of Appeal Denied Dec. 1, 1980.

1

John W. Murtaugh, Pittsburgh, for appellant.

Kathryn Simpson, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before HESTER, MONTGOMERY and LIPEZ, JJ.

HESTER, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Allegheny County. The procedural history and facts relevant to the issue on appeal are as follows:

On January 20, 1977, at approximately 1:50 a. m., Officer Robert Reed of the City of Pittsburgh, observed an automobile with four occupants parked in a lighted area of South Aiken and Harriett Streets. It was legally parked and the motor was off. Because there had been "over 100 burglaries" in that general area over the past several months, and there was a wind chill factor of approximately twenty degrees below zero, he decided to "check the vehicle." He did not have information that a burglary had recently occurred or that this vehicle was involved in a crime. As Reed quickly approached the vehicle, the three occupants of the

front seat appeared "very nervous", and the driver, Mr. Harris, leaned over just as the officer arrived at the car. With the aid of a flashlight and the illumination from a nearby street light, the officer observed that there was money all over the floor of the vehicle, which Harris had placed on the floor and attempted to shove under the seat. Officer Reed also noticed movement by the appellant. He "got a glimpse of a white plastic bag just making a quick motion going down between the seat . . . [a plastic bag with a white substance] . . .–like a powder or a hard substance." Reed described it as a right hand movement to place it between the door and the seat of the vehicle. Upon observing this motion, Reed "though possibly it was a drug transaction taking place." The officer asked Harris for identification and to exit the vehicle, which he did. Reed's partner stood by the passenger door where appellant was seated until the arrival of a back–up unit. At that time, Officer Reed asked appellant to step out of the car. Reed "possibly could have opened the door." Once the door was open, he saw the plastic bag laying between the door and the seat and confiscated it. He then placed appellant and the occupants of the car formally under arrest and seized the money totaling $415.00 which was on the floor on the driver's side. Following the denial of his motion to suppress, appellant proceeded to trial non–jury. He was found guilty of possession and possession with intent to deliver cocaine pursuant to 35 Pa.C.S.A. § 780–113(a)(16) and (30). Appellant's post trial motions were denied and he was sentenced to 11½–23 months incarceration. This timely appeal followed.

Appellant contends the court below erred in failing to grant his motion to suppress all items seized because he was arrested without probable cause. The Commonwealth first argues that the issue is waived because of a failure to properly preserve it for appeal relying upon *Commonwealth v. Austin*, 484 Pa. 56, 398 A.2d 941 (1979). Because we find that case inapposite, we will reach the merits of the issue raised by the appellant.

■ With regard to the suppression court's refusal to exclude all items seized at the time of the arrest:

"[o]ur function on review is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted."

*Commonwealth v. Hunt,* 280 Pa.Super. 205 at 207–208, 421 A. 2d 684 at 685 citing *Commonwealth v. Kichline,* 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976). The burden of showing probable cause is on the Commonwealth. *Commonwealth v. Holton,* 432 Pa. 11, 14–15, 247 A.2d 228, 230 (1968). The standard of probable cause, however, must be applied to the totality of the circumstances facing the police. Facts insufficient to justify an arrest if considered separately may in combination supply probable cause. *Commonwealth v. Roscioli,* 240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976). In *Commonwealth v. Tolbert,* 235 Pa.Super. 227, at p. 230, 341 A.2d 198, at p. 200 (1975), this Court said: "When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element .... We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might .... Finally, we must remember that in dealing with questions of probable cause, we are not dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond–a–reasonable–doubt' standard which we apply in determining guilt or innocence at trial." *Commonwealth v. Devlin,* 221 Pa.Super. 175, 289 A.2d 237 (1972).

Applying these standards to the facts of the instant case, the existence of probable cause appears clearly. The incident occurred at 1:50 a. m. The vehicle was obviously occupied. It was very, very cold, the wind–chill factor being 20 degrees below zero. In excess of 100 burglaries had

occurred in the general area within the six months preceding this incident. It was normal police routine to check an occupied vehicle under the circumstances. With the aid of his flashlight and the illumination from a nearby street lamp, the officer, following movement by the occupants, clearly observed currency covering the floor of the vehicle and observed a white plastic bag being quickly moved down between the seat and the door of the vehicle.

Appellant's argument that this did not create probable cause is completely lacking in merit. That position is fully answered by the opinion of this Court in *Commonwealth v. Kazior,* 269 Pa.Super. 518, at pages 525–526, 410 A.2d 822 at page 825 (1979), where we said, in reversing the trial court's suppression of evidence which was in plain view in an occupied vehicle:

> The trial court was of the opinion that appellee's constitutional rights had been violated initially when the door of his vehicle was open and he was directed to get out of his car. Even if we were to accept the doubtful conclusion that probable cause to arrest did not then exist, a limited invasion of appellee's privacy for the purpose of investigating possible criminal activity was constitutionally proper. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216 (1976). See also: *Commonwealth v. Benson,* 239 Pa.Super. 100, 361 A.2d 695 (1976); *Commonwealth v. Galadyna,* 248 Pa.Super. 226, 375 A.2d 69 (1977). "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary . . . it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at that time."

*Adams v. Williams,* supra, 407 U.S. at 145–146, 92 S.Ct. at 1923, 32 L.Ed.2d at 616–617. After appellee had emerged from his vehicle, the police were not required to close their eyes to evidence which lay open to view on the interior of the car. Accordingly, we must reject the trial court's legal conclusion that the physical evidence found lying in the interior of appellee's car was the product of an unlawful search.

In the instant case, the officer observed the hurried movements of the occupants as he approached the vehicle. While standing outside the automobile he observed the floor on the driver's side covered with currency. He also observed the appellant, on the passenger's side, sliding a plastic bag, containing a white substance, down between the seat and the right front door. The officer's observations were made with the aid of a four–cell flashlight and an overhead street lamp. The officer naturally concluded that a drug sale was taking place. The plastic bag contained cocaine. The physical evidence found lying in plain view in the interior of the vehicle was not the product of an unlawful search.

As was said by the United States Supreme Court in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) at 446 U.S. page 563, 100 S.Ct. page 1882, 64 L.Ed.2d page 515:

"In reviewing the factors that led the agents to stop and question the respondent, it is important to recall that a trained law enforcement agent may be "able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer." *Brown v. Texas,* 443 U.S. [47] at 52, n.2, 99 S.Ct. 2637 [at 2641 n.2], 61 L.Ed.2d 357. Among the circumstances that can give rise to reasonable suspicion are the agent's knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices. Law enforcement officers may rely on the "characteristics of the area," and the behavior of a suspect who appears to

be evading police contact. *United States v. Brignoni–Ponce*, 422 U.S. [873] at 884–885 [95 S.Ct. 2574 at 2581–2582], 45 L.Ed.2d 607. "In all situations the officer is entitled to assess the facts in light of his experience." Id., at 885 [95 S.Ct. 2574 at 2582] 45 L.Ed.2d 607."

and 446 U.S. at pages 561–562, 100 S.Ct. at page 1881, 64 L.Ed.2d at page 514:

"The public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit. Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances. Much of the drug traffic is highly organized and conducted by sophisticated criminal syndicates. The profits are enormous. And many drugs, including heroin, may be easily concealed. As a result, the obstacles to detection of illegal conduct may be unmatched in any other area of law enforcement."

and 446 U.S. at pages 565–566, 100 S.Ct. at page 1883, 64 L.Ed.2d at page 517:

"The jurisprudence of the Fourth Amendment demands consideration of the public's interest in effective law enforcement as well as each person's constitutionally secured right to be free from unreasonable searches and seizures. In applying a test of 'reasonableness,' courts need not ignore the considerable expertise that law enforcement officials have gained from their special training and experience. The careful and commendable police work that led to the criminal conviction at issue in this case satisfies the requirements of the Fourth Amendment."

The Commonwealth more than met its burden of probable cause. After appellant had emerged from the automobile, the police were not required to close their eyes to the evidence which lay open to view on the interior of the vehicle. Appellant's arrest was not without probable cause.

Judgment of sentence affirmed.