588 A.2d 513

**COMMONWEALTH of Pennsylvania**

v.

**Janet MARTINEZ, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 2, 1990.

Filed Jan. 23, 1991.

Reargument Denied April 8, 1991.

Bradley Bridge, Asst. Public Defender, Philadelphia, for appellant.

Helen Kane, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

JOHNSON, Judge.

On this appeal, we are asked to decide whether a woman who walked quickly away from a group of people on a street corner after observing a nearby police vehicle could be either arrested or detained for a limited purpose, where the pursuing police officers observed a bulge in her front pocket prior to commanding her to stop. We are unable to find that the specific and articulable facts available to the arresting officers would have warranted any reasonable belief that criminal activity was afoot. We conclude that, since grounds for seizure of the defendant even for a limited purpose did not exist, the seizure was unlawful. We are constrained to further conclude, therefore, that the evidence acquired as a result of the seizure should have been suppressed. Accordingly, we reverse the judgment of sentence and remand for a new trial.

A police officer must rely on specific and articulable facts which, if taken together with rational inferences from those facts, reasonably warrant a belief that criminal activity is afoot before an initial investigatory stop can lawfully be made. *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972); *Common-*

*wealth v. Smith,* 396 Pa.Super. 6, 577 A.2d 1387, 1389 (1990).

 A police officer is entitled to conduct a limited search of an individual to detect weapons if the officer observes unusual and suspicious conduct on the part of the individual which leads the officer to reasonably believe that criminal activity is afoot and that the person may be armed and dangerous. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968); *Commonwealth v. Lagana,* 517 Pa. 371, 376, 537 A.2d 1351, 1354 (1988). In striking the balance between the public interest and the individual's right to personal security free from arbitrary interference of law enforcement officials, the initial inquiry must focus upon the propriety of the initial restraint of the defendant's freedom of movement. *Adams v. Williams, supra, Commonwealth v. Anderson,* 481 Pa. 292, 297, 392 A.2d 1298, 1300–1301 (1978).

 Flight, in and of itself, cannot constitute probable cause to arrest. *Commonwealth v. Pegram,* 450 Pa. 590, 593, 301 A.2d 695, 697 (1973). The mere fact that a person "quickens his pace" upon being observed by police and starts to run when a police officer begins to chase him does not give rise to a reasonable belief that criminal activity is afoot, and is therefore insufficient to justify even a *Terry* stop, absent some other factor which would give rise to criminal conduct. *Commonwealth v. Jeffries,* 454 Pa. 320, 325, 311 A.2d 914, 917 (1973).

 Police can be said to have seized an individual only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that she or he was not free to leave. *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988).

In reviewing the ruling of a suppression court, the reviewing court's initial task is to determine whether the factual findings are supported by the record; in making this determination, if the suppression court held for the prosecution, the reviewing court must consider only the evidence of

the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Monarch*, 510 Pa. 138, 507 A.2d 74 (1986). The reviewing court may not substitute its own findings for those of the suppression court, but this principle of deference has one important caveat: Appellate courts are not bound by findings wholly lacking in evidence. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137, 139 (1983).

In this case, Martinez did not present any evidence to contradict that offered by the Commonwealth. We are, therefore, bound by the trial court's findings of fact to the extent that they are supported by the record. *Commonwealth v. Smith*, 396 Pa.Super. 6, 577 A.2d 1387, 1389 (1990).

The facts presented by the Commonwealth at the suppression hearing do not support any conclusion that criminal activity was afoot and that Janet Martinez was engaged in such activity.

At the suppression hearing held February 10, 1989, Officer Howard Lee, a Philadelphia police officer, was the only witness. He testified that on October 6, 1988, he was on duty along with his partner, Robert Kimbrough. They were in an unmarked police vehicle. Both officers were in uniform. The time was approximately 12:20 A.M. Suppression Transcript, February 10, 1989, pages 7–8.

As the vehicle in which the uniformed officers were riding approached the intersection of Clearfield and Hutchinson Streets in the City of Philadelphia, Officer Lee observed Janet Martinez (Martinez), the appellant in this case, and four or five other people standing on the corner. The members of the group appeared to be talking. *Id.*, pages 8, 15. The members of the group looked in the direction of the approaching police vehicle. Martinez turned and started to walk very quickly north on Hutchinson Street. The other people in the group went in different directions. *Id.*, pages 8–9, 16–17.

Officer Lee and his partner, still in the vehicle, turned into the block up which Martinez had walked, and pursued Martinez. As the officers drew closer to her, Officer Lee observed that Martinez was "holding her hands in the front of her coat, leaning forward, as if to be holding something, leaning forward, walking quickly up the street." *Id.*, page 18. As the police vehicle drew alongside Martinez, Officer Lee asked her "would she come over here, turn around and take her hands out of the jacket, and put her hands on the car." *Id.*

Lee further testified:

She leaned all the way on the car with her face down towards the hood of the car. Her whole body, upper torso was leaning on the front of our car. I asked her to stand up, and keep her hands on the car, and move back away from the car, don't lean on the car the way she was, and as she stood up, and did as I asked her, one of the bags dropped on the ground.

*Id.*, page 19. Lee later testified, on cross-examination:

Q. You were riding up alongside of her as she was running away from you?

A. She was in the street, and when we pulled up, she moved over to the side. I pulled up next to her and exited the vehicle. She was toward the front of my car. I exited my vehicle, came around to her, and my partner exited the other side, and cut on the other side of her.

Q. So he was cutting her off so she couldn't get passed [sic] him?

A. I guess so.

*Id.*, page 20.

██ The Fourth Amendment applies to all seizures of a person, including seizures that involve only a brief detention short of traditional arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Commonwealth v. Brown*, 388 Pa.Super. 187, 190, 565 A.2d 177, 178 (1989). Officer Lee and his partner exited their police vehicle, so positioning themselves that Martinez was

"cut off". Officer Lee then ordered Martinez to turn around, take her hands out of her jacket and put her hands on the car. At this moment, well before any alleged contraband had fallen to the ground, Martinez had been "seized" for Fourth Amendment purposes.

In *Commonwealth v. Espada*, 364 Pa.Super. 604, 528 A.2d 968 (1987), we held that in order for a stop, or "seizure," to be reasonable, and therefore legal under *Terry v. Ohio*, the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped. 364 Pa.Super. at 609, 528 A.2d at 970. Mere presence near a high crime area or in the vicinity of a recently reported crime does not justify a *Terry* stop. *Id.* Conversely, an officer's observation of irregular behavior without a concurrent reasonable belief that crime is afoot renders a stop unreasonable. 364 Pa.Super. at 609–10, 528 A.2d at 970.

What are the specific, articulable facts which would reasonably warrant a belief that criminal activity was afoot, when Officer Lee ordered Martinez to put her hands on the police vehicle? Martinez had walked quickly away from a street corner, at 12:20 A.M. She was holding her hands in the front of her coat and walking quickly up the street. There are no other articulable facts attributable to Martinez.

The suppression court, in concluding that the investigative stop was lawful, mixed together facts of events occurring both *before* and *as a result of* the stop. The court seemingly believed that Martinez brought the search and seizure upon herself by "drawing attention to herself." The suppression court stated:

> The issue here is whether the police officer had acted in a manner, which somehow violated the defendant's constitutional rights. The officer did nothing wrong by approaching the defendant, as she walked rapidly away. She drew attention to herself in the crowd, and there would be nothing unusual about the defendant or her

appearance at this time, then the Court may be inclined to say that the officer had no reason to act any further after that. *The problem here was that the large bulge in her coat drew attention to her, and also, Lee decided to investigate for weapons,* principally, because of the very nature of the neighborhood, and what occurs there.

At this time, *by the defendant acting as she did and drawing attention to herself and carrying such a numerous amount of contraband as to undoubtedly create attention to herself, and draw attention to herself, that she invited what appears to be an investigatory stop,* and what flowed from there, is letting go of the item, and letting it drop.

There is nothing that the officer physically did to force her to drop this item out of her pocket. Therefore, the Court will make the following conclusions of law: That Officer Lee acted with probable cause when he stopped the defendant for an investigative stop, believing and—and he legitimately believed that the defendant possessed—may have possessed a weapon, and he acted in a manner consistent with the constitutional rights of the defendant.

There was—for this reason the abandonment, and the dropping of the items by the defendant onto the ground was not forced by the officer, and therefore, the defendant's motion to suppress is denied.

Suppression Transcript, *supra*, pages 30–32. (emphasis added).

 The suppression court committed error in concluding that an officer's belief that a person might be armed may serve as an additional articulable fact to justify the initial stop. The *Terry* frisk is justified *only after* there exist sufficient articulable facts to reasonably warrant a belief that criminal activity is afoot. *Commonwealth v. Hicks*, 434 Pa. 153, 158–59, 253 A.2d 276, 279 (1969). We are unaware of any caselaw which supports the suppression court's apparent conclusion that where an individual "draws attention to one's self", an investigatory stop is justified.

Here, the police officers were unaware of any "bulge" in Martinez' coat until they had pursued her up Hutchinson Street. Supp.Transcript, pages 10, 18. The defendant was known to Officer Lee. *Id.*, pages 10, 17.

If we limit our analysis to the facts known to Officer Lee prior to his ordering Martinez to place her hands on the hood of the police vehicle, we have only the fact that Martinez was seen talking with a group of people on a street corner at 12:20 A.M., she walked away quite rapidly after looking in the direction of an unmarked police vehicle, and her jacket appeared to have a "bulge" in it.

This case is quite similar on its facts to those presented in *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973). There, four police officers in an unmarked vehicle observed Jeffries walking along a public street. When Jeffries saw the officers, he quickened his pace. One officer left the vehicle and began to pursue Jeffries who then began to run. Before being overtaken, Jeffries threw a small package under a nearby automobile. The package was recovered and found to contain heroin. Our supreme court rejected the Commonwealth's arguments that Jeffries' flight supplied the necessary factual foundation for probable cause or, in the alternative, reasonable grounds to believe criminal activity was afoot under *Terry v. Ohio*. The court went on to hold that the evidence retrieved from under the automobile must be suppressed, due to the police officers' unlawful and coercive activity, citing *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973).

In this case, the police officers were not responding to a radio broadcast reporting probable criminal activity in progress. *Cf. Commonwealth v. Lagana, supra.* There is nothing in the hearing transcript to support a finding that the officers reasonably could have believed Martinez was armed and dangerous, prior to their stopping her. On the contrary, Officer Lee testified to knowing the defendant quite well from prior contacts. We are left with Martinez' flight from the street corner and the bulge in her jacket as

the only articulable facts which validly could support a conclusion of criminal activity being afoot.

These facts are not enough. At the moment that Martinez was told to come towards the police officers, turn around and put her hands on the car, there was no basis to reasonably believe that Martinez had engaged in any unusual and suspicious conduct. Without that, one cannot reach the issue of whether the suspect is armed and dangerous. The coercive activity was unlawful. The evidence flowing from that unlawful conduct should have been suppressed.

We are constrained to vacate the judgment of sentence, reverse the order of the suppression court together with the verdict of guilty of June 1, 1989, and remand for a new trial.

Order reversed. New trial granted.

CERCONE, J. files a dissenting opinion.

CERCONE, Judge, dissenting.

I respectfully dissent. Under the circumstances of this case, I would affirm the trial court's decision which denied appellant's motion to suppress evidence obtained incident to a search allegedly performed without probable cause.

The majority skirts several important facts that were brought out before the suppression court. First, appellant, Janet Martinez was known to the two policemen. Under ordinary circumstances, she would often approach them and converse with them. On the particular occasion in question, as soon as she spotted the two policemen, Ms. Martinez went in the opposite direction in an attempt to avoid them. Second, Officer Lee had been assigned to permanent detail and had made numerous drug arrests in the area. He observed a group of people congregating on a street corner in this high drug area. Although such activity would be innocent in and of itself, this specific street corner in question was personally known to the officer to be an area where drug transactions took place.

While people may congregate in public without violating any law, such conduct in this instance was also consistent with that of drug trafficking. *See Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986) (wherein we held that the fact that a suspect's activity may be consistent with innocent behavior does not alone make a detention and limited investigation illegal because reasonable suspicion standard is less stringent than probable cause standard and permits an investigatory stop when facts within officer's knowledge and his reasonably drawn inferences support a fair suspicion that criminal activity may be afoot). Thus, it was reasonable for Officer Lee to approach Ms. Martinez to see whether a drug transaction was, in fact, occurring.

Upon the arrival of the uniformed police, the group scattered into different directions with Ms. Martinez scurrying north. Law enforcement officers may rely on their knowledge of the characteristics of the area as well as an attempt to evade police contact when determining that it is appropriate to stop a suspect and question him. *Commonwealth v. Fiore*, 281 Pa.Super. 1, 6–7, 421 A.2d 1116, 1119 (1980). *See also Commonwealth v. Pine*, 370 Pa.Super. 410, 536 A.2d 811 (1988) (wherein we held that police officer who saw suspect carrying a television set at 2:00 a.m. was entitled to make a temporary investigatory stop when the suspect had twice walked away upon seeing officer's police car and officer knew that numerous burglaries had occurred in that area).

In the instant case, the police knew: (1) that this was a high drug trafficking area; (2) that the particular street corner in question was often the site of drug transactions; and (3) that Ms. Martinez usually approached and conversed with them as opposed to avoiding them. These facts gave the police sufficient reason to follow Ms. Martinez. As they pulled up alongside her, Officer Lee testified that he noticed a large bulge under Ms. Martinez's jacket that she appeared to be holding by having her hands in her pockets. In an attempt to investigate further, Officer Lee asked Ms. Martinez to step up against the unmarked police car. Ms.

Martinez bent her torso over the hood of the car in an apparent attempt to keep the bulge under her jacket. Upon asking her to step away from the car, Ms. Martinez dropped a plastic bag from under her jacket. The plastic bag contained numerous vials which appeared to contain a white chalky matter that the officers believed to be a controlled substance. Officer Lee then placed Ms. Martinez under arrest and proceeded to search further and found four more clear plastic bags, each containing numerous vials. It was later determined that there were one thousand vials, each containing cocaine. Thus, the culmination of all of the facts as they presented themselves to the police, justified the investigatory stop of Ms. Martinez. I would find that it was not until after the discovery of the cocaine that Ms. Martinez was arrested.

Thus, I would find that we cannot ascribe to a police officer, highly trained in the field of narcotics, complete ignorance of what is familiar to him and learned over a period of time about conduct and customary events. For this reason, I must respectfully dissent.