J-S03038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
DARIAN SMITH : No. 523 EDA 2018

Appeal from the Order January 16, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006271-2017

BEFORE:  BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 28, 2019**

The Commonwealth of Pennsylvania appeals from the Order granting the Motion to Suppress filed by Darian Smith ("Smith").  We affirm.

The evidence adduced at the suppression hearing reveals that at approximately 10:00 p.m. on July 8, 2017, Philadelphia Highway Patrol Officer Clifford Gilliam ("Officer Gilliam") and his partner, Officer Antoine Small ("Officer Small"), were on routine patrol, in full uniform, in their marked police cruiser.  *See* N.T., 1/16/18, at 5-9.  Officer Gilliam had ten years of police experience at that time.  *Id.* at 6.  The officers were travelling southbound on 32nd Street in North Philadelphia, and proceeded to turn onto Norris Street. *Id.* at 7, 22.  Officer Gilliam stated that this particular area was well-known for being a high-crime area, including unlawful firearms possession and violent crimes.  *Id.* at 7.  The Officers were assigned to patrol this particular area due to two or three recent shootings.  *Id.* at 7-8.

While driving the police cruiser on Norris Street, which was illuminated with streetlights, Officer Gilliam observed Smith walking between two parked cars, from a distance of approximately one car-length away. *Id.* at 9-10. Officer Gilliam stated that

> what brought my attention to [Smith], when he came around the car, he had both hands in the front of his pants, … and appeared to be clutching a heavy object. Now, when I saw that …, it was no doubt in my mind what he was clutching. It appeared to be a firearm.

*Id.* at 10. Officer Gilliam testified that based upon his police experience, "the actions of [Smith] that night [were] consistent with someone … trying to conceal a firearm[.]" *Id.* at 11. Notably, however, on cross-examination, Officer Gilliam clarified that he never saw the "heavy object" that he suspected Smith was clutching. *Id.* at 25. Officer Gilliam further agreed that he "didn't see any type of angulation in [Smith's] pants[,] such as an outline of a gun …." *Id.* Moreover, Smith did not run or flee in response to seeing the police. *Id.* at 26. *But see also id.* at 12 (wherein Officer Gilliam stated that he saw another man standing on the side of the street near Smith, and that "[Smith] was quickly approaching the male. Kind of trying to blade his body away from my position to get to the other male.").

Upon making the above observations, Officer Gilliam exited his vehicle,[1] followed by Officer Small, to approach Smith. *Id.* at 13-14. Officer Gilliam immediately came up behind Smith, patted him down,[2] and felt in Smith's basketball shorts an item that the Officer immediately knew to be a firearm. *Id.* at 14, 16. Officer Gilliam then pushed Smith up against a parked car, placed him in handcuffs, and discovered in his shorts a loaded .45 caliber handgun. *Id.* at 17-18.

The suppression court also heard testimony from Officer Small. Officer Small, who had over twenty years of police experience at the time, testified that after he exited the police cruiser to follow Officer Gilliam, he saw Smith holding the handle of a black gun. *Id.* at 31-33, 37-38. Officer Small testified that he then alerted Officer Gilliam to the presence of a gun by yelling out the word "Yo." *Id.* at 33-34. However, on cross-examination, Officer Small admitted there was no mention, in any of the police reports filed in this case, that he had seen the handle of a gun on Smith's person, and that the Officer's

---

[1] Officer Gilliam testified that it was only a few seconds between the time he first saw Smith and when the Officer exited his vehicle to encounter Smith. *Id.* at 24.

[2] There is no indication in the transcript that Officer Gilliam said anything to Smith prior to patting him down.

testimony at the suppression hearing was the first time that this had been mentioned. *Id.* at 41-43.[3]

Following his arrest, the Commonwealth charged Smith with firearms not to be carried without a license and carrying a firearm on public streets in Philadelphia.[4] On August 7, 2017, Smith filed a Motion to Suppress the firearm evidence. He asserted that the search of his person was unlawful and unsupported by probable cause, or reasonable suspicion that he was armed and dangerous, and therefore, the firearm must be suppressed as fruit of the poisonous tree.

On January 16, 2018, after considering the foregoing testimony, the suppression court granted Smith's Motion to Suppress. In response, the Commonwealth timely filed a Notice of appeal,[5] followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal. The suppression court then issued a Rule 1925(a) Opinion in support of its ruling.

---

[3] As we explain below, the suppression court found Officer Small's testimony to be incredible.

[4] 18 Pa.C.S.A. §§ 6106(a)(1), 6108.

[5] We note that in filing this interlocutory appeal, the Commonwealth complied with Pennsylvania Rule of Appellate Procedure 311(d), which provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

On appeal, the Commonwealth presents the following issue for our review: "Whether the [suppression] court erred by suppressing [Smith's] firearm after police officers saw him clutch a heavy object in his shorts and 'blade' his body away from the officers[,] late at night[,] in a high[-]crime neighborhood[?]" Brief for the Commonwealth at 7.

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses[,] together with the evidence of the prosecution[,] that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Petty***, 157 A.3d 953, 955 (Pa. Super. 2017) (internal citations and quotation marks omitted). Additionally, "it is the sole province of the suppression court to weigh the credibility of the witnesses." ***Commonwealth v. Caple***, 121 A.3d 511, 517 (Pa. Super. 2015) (citation omitted).

"It is well settled that an officer may pat-down an individual whose suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others." ***Commonwealth v. Gray***, 896 A.2d 601, 605-06 (Pa. Super. 2006) (citing ***Terry v. Ohio***, 392 U.S. 1 (1968) (holding that police may conduct an

investigatory detention and frisk if they have reasonable suspicion that criminal activity is afoot)). In order to prove reasonable suspicion, "the police officer must be able to point to specific and articulable facts[,] and reasonable inferences drawn from those facts[,] in light of the officer's experience." *Commonwealth v. Cook*, 735 A.2d 673, 677 (Pa. 1999). "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." *Commonwealth v. Walls*, 53 A.3d 889, 893 (Pa. Super. 2012).

> Further, the delicate balance between protecting the right of citizens to be free from unreasonable searches and seizures, on the one hand, and protecting the safety of our citizens and police officers[,] by allowing police to make limited intrusions on citizens while investigating crime, on the other hand, requires additional considerations when the police have a reasonable suspicion that a person may be armed.

> * * *

> Thus, under *Terry* …[,] a police officer may frisk an individual during an investigatory detention when the officer believes, based on specific and articulable facts, that the individual is armed and dangerous. When assessing the reasonableness of an officer's decision to frisk a suspect during an investigatory detention, an appellate court does not consider the officer's unparticularized suspicion or "hunch" but rather[,] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Commonwealth v. Stevenson*, 894 A.2d 759, 771-72 (Pa. Super. 2006) (internal citations, ellipses, and quotation marks omitted).

The Commonwealth contends that Officer Gilliam had reasonable suspicion to perform a *Terry* stop and frisk due to the fact that he was patrolling a known high-crime area at night, and observed Smith with his hands in his waistband area, apparently clutching a heavy object in a manner that indicated to Officer Gilliam, an officer with a decade of law enforcement experience, that Smith was armed. *See* Brief for the Commonwealth at 11-19.

In its Opinion, the suppression court stated as follows in support of its ruling that the police lacked reasonable suspicion:

> [T]he only specific, articulable fact that Officer Gilliam possessed was that [Smith] had his hands in front of him grabbing an object. The police officer could not make out the form of the object, [and] did not see a bulge, but just "knew" it was a gun. [Smith] did not attempt to flee, was not looking around furtively, nor was he the subject of a radio call or complaint. There was absolutely no interaction between the police officers and [Smith]. Officer Gilliam was clear. He did not ask [Smith] to stop, did not inquire of [Smith] what was in his waist, or any other inquiry. The [O]fficer got out of his car, immediately went to [Smith] and grabbed him from behind, reaching around Smith in a bear hug to retrieve whatever was in [Smith's] waist. The police further agreed with defense counsel that they were patrolling a particular area, based upon an unknown shooting, at an unknown time, at an unknown location, when they saw a group of guys[,] and the police made a decision to stop them. There was a complete lack of specific, articulable facts which would warrant a man of reasonable caution in the belief that criminality was afoot[,] and that the action of grabbing [Smith] from behind[,] with no other interaction, was the appropriate action to be taken. Accordingly, the court acted within its discretion in granting [Smith's] [M]otion to suppress.

Suppression Court Opinion, 4/11/18, at 6 (paragraph break omitted). Moreover, the suppression court stated that it found Officer Small's testimony

to be incredible. **See id.** at 3 (stating that "Officer Small's testimony was not credible given the inconsistencies and his lack of recollection regarding the incident, along with the absence of any of these observations[, *i.e.*, concerning his seeing the handle of a firearm in Smith's waistband,] in any of the police reports.").

Initially, to the extent that the suppression court discredited the testimony of Officer Small, we may not disturb this finding. **See Caple**, **supra**.

Further, we agree with the suppression court's legal determination that Officer Gilliam failed to state sufficient articulable facts to reasonably suspect that Smith was engaged in criminal activity necessary for an investigative detention. Our review discloses that the cases the Commonwealth cites to support a contrary finding are all distinguishable. Officer Gilliam did not (1) actually see Smith holding a firearm; (2) describe seeing any particular shape or characteristic that was consistent with a firearm; (3) see Smith flee or take evasive actions; and (4) the Officer only observed Smith for a matter of seconds before coming up behind him without a word, and stopping and frisking him. **Cf. Commonwealth v. Carter**, 105 A.3d 765, 766, 774-75 (Pa. Super. 2014) (*en banc*) (holding that police officer had reasonable suspicion to conduct a **Terry** frisk, where the defendant was standing on a street corner in a high-crime area at night, had a weighted and *angled bulge* in his coat pocket, was alerted to the officer's presence and *intentionally turned his body*

*away several times to conceal the bulge* in his coat pocket, and the officer observed the defendant walking away from the known drug corner when the officer repeatedly circled the area for ten minutes); ***Commonwealth v. Foglia***, 979 A.2d 357, 361 (Pa. Super. 2009) (*en banc*) (finding "evasive behavior" in walking away from police contributes to reasonable suspicion). Aside from seeing Smith with his hands in his waistband area, allegedly holding some unidentified heavy object, Officer Gilliam did not see any indicia of criminal activity. ***Cf. Commonwealth v. E.M.***, 735 A.2d 654, 657 (Pa. 1999) (finding reasonable suspicion existed where the police, *after* observing plastic bags of what appeared to be marijuana bulging out of the jacket pocket of the friend with whom E.M. had been smoking, saw a bulge that "could have been characteristic of a small semi-automatic" in E.M.'s front pants pocket). Further, our Courts have repeatedly emphasized that mere presence in a high-crime area is alone insufficient to establish reasonable suspicion. ***See In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001); ***see also Commonwealth v. Key***, 789 A.2d 282, 289-90 (Pa. Super. 2001) (stating that "[a]n individual's act of merely walking away from police officers in a 'high crime area' is manifestly insufficient to justify an investigative detention of that individual.").

Rather, we find that the instant case is more analogous to this Court's decision in ***Commonwealth v. Martinez***, 588 A.2d 513 (Pa. Super. 1991). The ***Martinez*** Court held that a situation in which the defendant "walked quickly away from a group of people on a street corner after observing a police

vehicle …[, and] where … officers observed a bulge in her front pocket[,]" does not constitute reasonable suspicion of criminal activity necessary for an investigative detention. *Id.* at 514; *see also id.* at 516 (stating that an officer's mere belief that a person might be armed cannot serve as an additional articulable fact to justify an initial stop). The facts in *Martinez* are similar to the instant case, except, instead of seeing an unidentified "bulge," Officer Gilliam saw Smith holding his hands in his waistband area, apparently holding an unidentified heavy object, which the Officer believed was indicative of secreting a firearm. Moreover, Officer Gilliam observed *less* suspicious activity than the officers in *Martinez*, in that Smith was not seen "walking quickly away" upon noticing the police.

Additionally, contrary to the Commonwealth's protestations, *see* Brief for the Commonwealth at 17-18, there is no evidence that the suppression court disregarded Officer Gilliam's experience, or the nature of the neighborhood being a high-crime area, in weighing the totality of the circumstances. Rather, in considering the totality of the circumstances, the suppression court ostensibly disbelieved Officer Gilliam's contention that he reasonably suspected that Smith's actions and appearance were indicative of his secreting a firearm. Again, it is not within our purview to question the suppression court's credibility determinations. *See Caple*, *supra*.

Based upon the foregoing, because we discern no error in the suppression court's factual findings or its application of the law to these findings, we affirm its Order granting Smith's Motion to Suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/19