J-A14021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERREL PATRICK DIXON | : | No. 1320 WDA 2018 |

Appeal from the Order Entered, September 11, 2018,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0011754-2017.

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED AUGUST 01, 2019**

The Commonwealth appeals from the order granting Terrel Patrick Dixon's motion to suppress evidence obtained by police incident to a warrantless search conducted as part of a stop and frisk.  We affirm.

The suppression court stated its findings of fact as follows.

> [Officer] Michael Catanzaro, an 18[-]year veteran of the Wilkinsburg Police Department, was assigned to pick up a [police] vehicle from a department mechanic on September 12, 2017.  He was traveling in an unmarked vehicle and in plain clothes.

> At approximately 11:45 a.m., Officer Catanzaro was driving through the 900 block of Stoner Way when he observed two black males standing in the back yard [sic] of 921 Ross Avenue.  Officer Catanzaro did not recognize either of the males, although subsequently it was determined that . . . Dixon . . . was from that area.

> As Officer Catanzaro approached, the two males walked away from the back yard [sic], so he radioed the patrol officers to stop and talk to [Dixon].

Officer Catanzaro testified that he noticed [Dixon] "tap" his right side in a manner he thought was consistent with carrying a concealed weapon.

There [were] no active calls for assistance in that specific area, and no recent known criminal activity. The only testimony was that there were several cases that were assigned to the Criminal Investigations Division, including burglaries and a robbery that occurred in that general area. Additionally, Officer Catanzaro testified that he executed a search warrant one block over approximately two months prior.

When the patrol unit stopped [Dixon], [he] appeared nervous, and looked about the area from side to side. For this reason, Officer Catanzaro directed that Officer Granger conduct a pat down to determine whether [Dixon] was armed.

It was unknown to Officer Catanzaro whether [Dixon] had a license to carry a concealed weapon, and [he] stated that [Dixon] "appeared to be someone that would not be eligible to possess a permit to carry a firearm concealed." Officer Catanzaro did not elaborate on this statement, but it is implied in the testimony that it was due to [Dixon] not attaining the age of 21 at the time of the offense.

Trial Court Opinion, 9/11/18, at 1-2 (citations to the record and formatting omitted).

When Officer Granger performed the pat down on Dixon, he discovered a firearm in his waistband. The police arrested Dixon and charged him with a single count of firearms not to be carried without a license.[1]

Dixon filed a motion to suppress the evidence. A suppression hearing was held on May 24, 2018, and on August 13, 2018, the suppression court orally granted Dixon's motion. The Commonwealth petitioned the court to issue findings of fact and conclusions of law, and filed a motion for

---

[1] 18 Pa.C.S.A. § 6106(a)(1).

reconsideration. On September 11, 2018, the suppression court issued its written findings of fact and conclusions of law, and entered an order granting suppression on the basis that the facts, as provided by Officer Cantanzaro's testimony at the suppression hearing, did not establish "the requisite reasonable suspicion that criminal activity was afoot to stop and frisk [Dixon]." Trial Court Opinion, 9/13/18, at 2. That same day, the suppression court denied the Commonwealth's motion for reconsideration.

The Commonwealth filed a timely notice of appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925. The Commonwealth raises one issue on appeal: "Whether the trial court erred in finding that the police officer did not have reasonable suspicion to believe [Dixon] was carrying an unlawful firearm, and therefore, lacked grounds to stop and search him?" Commonwealth's Brief at 4.

When, as here, police have acted without a warrant, "determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." **Ornelas v. United States**, 517 U.S. 690, 699 (1996). But "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." **Id**.

Because Dixon prevailed at the suppression hearing "we consider only the evidence of [Dixon] and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the suppression

hearing record as a whole." ***Commonwealth v. Lukach***, 195 A.3d 176, 183 (Pa. 2018) (citations and quotation marks omitted). As for the subject matter, "our scope of review is limited to the factual findings and legal conclusions of the suppression court." ***In re L.J.***, 79 A.3d 1073, 1080 (Pa. 2013). Additionally, citing to ***L.J.***, this Court has said "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." ***Commonwealth v. Cruz***, 166 A.3d 1249, 1254 (Pa. Super. 2017), ***appeal denied***, 180 A.3d 1207 (Pa. 2018).

Generally, "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." ***Commonwealth v. Wilson***, 655 A.2d 557, 560 (Pa. Super. 1995) (citations and quotation marks omitted). One recognized exception is where an officer has reasonable suspicion to believe that criminal activity is afoot, and that an individual might be armed and dangerous. ***Terry v. Ohio***, 392 U.S. 1, 30, (1968). When this threshold is satisfied, the officer "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." ***Id***. Such a "limited search" is commonly referred to as an investigatory detention or a ***Terry*** stop.

For an investigatory detention to be legal under **Terry**, the officer's reasonable suspicion of criminal activity must be supported by specific and articulable observations "of suspicious or irregular behavior on behalf of the particular [individual] stopped." **Commonwealth v. Martinez**, 588 A.2d 513, 515 (Pa. Super. 1991) (citations omitted). Reasonable suspicion is a less stringent standard than probable cause. **See Commonwealth v. Conrad**, 892 A.2d 826, 829 (Pa. Super. 2006). Nevertheless, in order to establish reasonable suspicion, the officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." **United States v. Sokolow**, 490 U.S. 1, 7 (1989) (citations and quotation marks omitted). In order to determine whether an officer had reasonable suspicion to lawfully initiate an investigatory detention, we look to the totality of the circumstances. **Commonwealth v. Semuta**, 902 A.2d 1254, 1259 (Pa. Super. 2006).

The Commonwealth argues that the suppression court erred in finding that the officers lacked reasonable suspicion to justify the investigatory detention and the limited search of Dixon's person for weapons. Commonwealth's Brief at 21. According to the Commonwealth, the investigatory detention and search were supported by Officer Cantanzaro's testimony that (1) he had 18 years of experience as a police officer in Wilkinsburg; (2) he observed two unfamiliar males standing in the backyard of a "high crime area;" (3) while he drove past, he noticed, through his rearview mirror, one of the males "tap" his waistband in a manner consistent

- 5 -

with someone concealing a firearm; (4) after Officer Granger had stopped Dixon, Dixon appeared nervous and looked about the area from side to side indicating an intent to flee; and (5) Dixon appeared to be too young to possess a valid license to carry a concealed firearm. *Id*. at 23-24; *see also* N.T. Suppression, 5/24/18, at 57, 59, 60, 62, 63.

In support of its argument, the Commonwealth relies upon several cases in which this Court determined that there was reasonable suspicion to justify an investigatory detention. *See Commonwealth v. Carter*, 105 A.3d 765, 774-75 (Pa. Super 2014) (finding reasonable suspicion where police observed the defendant in a high crime area, walking away from a known drug corner, with a weighted and angled bulge in his coat pocket, and repeatedly attempting to conceal the bulge in his pocket once alerted to police presence); *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa. Super 2009) (finding reasonable suspicion where police received an anonymous tip that a man dressed in black possessed a firearm at a location known for its high volume of drugs and weapons, and upon arrival at the location, police observed a man dressed in black who engaged in evasive behavior by walking away from the police and looking over his shoulder before sitting down behind some females); and *Commonwealth v. Stevenson*, 894 A.2d 759, 764 (Pa. Super 2006) (finding reasonable suspicion where police officers were standing behind an individual in a convenience store and observed that his pocket was bulging and weighted down as if it contained a firearm, and the individual

began to suspiciously adjust his clothing and contents of his pocket while continuously looking back over his shoulder at the officers).

However, those cases are factually distinguishable from this case. Here, Officer Cantanzaro did not testify that he observed any bulge in Dixon's clothing, nor did he state that any aspect of Dixon's clothes appeared to be weighted down. Rather, Officer Cantanzaro testified that he became suspicious of Dixon because he placed his hand on "his front waist area." *See* N.T. Suppression, 5/24/18, at 66. Notably, Officer Cantanzaro conceded that Dixon was not carrying anything in his hands that was suspicious, and that he did not see Dixon commit any crime as he passed. *Id*. Officer Cantanzaro further conceded that he was not in the area to conduct any investigation, and the officers received no active calls or anonymous tips regarding suspicious individuals or activity in that area at that particular time. *Id*. at 73.

Moreover, while the Commonwealth contends that Dixon was in a high crime area, the suppression court made no such finding.[2] Additionally, the

_____

[2] The suppression record does not reflect a high volume of cases in this area. Indeed, Officer Cantanzaro testified only that "several cases were assigned to the Criminal Investigations Division, including burglaries and *a* robbery that occurred in that general area." *See* N.T. Suppression, 5/24/18, at 58. He also testified that he made *one* narcotics related arrest and executed *one* search warrant nearby roughly two months prior to Dixon's arrest. *Id*.

suppression court made no finding that Dixon walked away in a suspicious or evasive manner.[3]

Although the Commonwealth argues that Officer Cantanzaro's testimony regarding Dixon's nervous disposition and youthful appearance should be considered as part of the totality of the circumstances that justified the stop, we cannot include these observations in our analysis because they occurred **after** Officer Granger stopped Dixon. **See Martinez**, 588 A.2d at 516 (holding that the totality of the circumstances analysis must be limited to the facts known to the officers **prior** to initiating the stop).

Even if Officer Cantanzaro reported to Officer Granger that he saw a firearm protruding from Dixon's waistband, or what appeared to be the outline of a firearm concealed by Dixon's clothing, the officers would still lack reasonable suspicion in order to justify an investigatory detention. **See Commonwealth v. Hicks**, 208 A.3d 916, 949 (Pa. 2019) (concluding that there was no reasonable suspicion to justify an investigatory detention where the police received a report that an individual exited his vehicle with a firearm visible in his waistband, and subsequently pulled his shirt over the firearm to

---

[3] The suppression record supports the absence of such a finding because Officer Cantanzaro merely testified that, as he was driving past Dixon in an unmarked police car, while in plain clothes, he saw "the lead male walk away first in a hurried manner." **See** N.T. Suppression, 5/24/18, at 59; **see also Commonwealth v. Key**, 789 A.2d 282, 289-90 (Pa. Super. 2001) (holding that merely walking away from the police does not provide reasonable suspicion).

conceal it as he walked into a gas station).  According to *Hicks*, the mere possession of a concealed firearm in public is not enough to establish reasonable suspicion because such rule "allows a police officer to base the decision to detain a particular individual upon an inchoate and unparticularized suspicion or hunch that the individual is unlicensed and therefore engaged in wrongdoing.  *Id*. at 946 (internal quotations and citations omitted).

In our view, this case is factually similar to *Martinez*, where this Court determined that reasonable suspicion was not established where the facts known to the officers prior to initiating the investigatory detention established only "that Martinez was talking with a group of people on a street corner at 12:20 A.M., she walked away quite rapidly after looking in the direction of an unmarked police vehicle, and her jacket appeared to have a bulge in it." *Id*. at 516 (internal quotation marks omitted).  This Court held that these facts did not amount to reasonable suspicion that Martinez was armed and dangerous or that criminal activity was afoot. *Id*.  The observations by police in this case are even less than those at issue in *Martinez*, since Officer Cantanzaro merely observed Dixon in a backyard, touch his waistband, and begin to quickly walk down the street.

Limiting our analysis to the facts known to Officer Cantanzaro prior to directing Officer Granger to initiate an investigative detention of Dixon, we agree with the suppression court's determination that the evidence was insufficient to establish a reasonable suspicion that criminal activity was afoot.

***See Hicks***, ***supra***; ***Martinez***, ***supra***.  Accordingly, we affirm the suppression court's order granting Dixon's motion to suppress the evidence.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  8/1/2019