J. S31032/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                                :              PENNSYLVANIA
                                          v.                    :
                                                                :
WILLIE JAMES HILL,                          :              No. 2057 MDA 2019
                                                                :
                                Appellant       :


Appeal from the Judgment of Sentence Entered May 29, 2018,
in the Court of Common Pleas of Dauphin County
Criminal Division at No. CP-22-CR-0002905-2017


BEFORE:  BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED SEPTEMBER 25, 2020**

Willie James Hill appeals the May 29, 2018 judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after he was convicted in a bench trial of possession of a firearm by a prohibited person, carrying a firearm without a license, and two counts of simple possession of a controlled substance.[1]  Appellant was sentenced to an aggregate term of five to ten years' imprisonment.  After careful review, we affirm.

This appeal is limited to the trial court's order denying appellant's motion to suppress physical evidence.  On October 17, 2017, appellant filed a pre-trial motion to suppress the evidence obtained in violation of his constitutional rights.  Appellant's counsel argued that his arrest was unlawful and not

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 35 P.S. § 780-113(a)(16), respectively.

supported by probable cause and all the evidence recovered should be suppressed as fruits of the poisonous tree. (**See** appellant's motion to suppress, 10/17/17 at ¶ 4 and prayer for relief.)

On January 18, 2018, a suppression hearing was held. The trial court[2] found that the following facts were established during that hearing:

> Officer Donald Bender (hereinafter "Officer Bender") is employed as a police officer for Harrisburg Police. Officer Bender was dispatched to the area of Second and Verbeke on the night of May 11, 2017 for a report of a black male, waving a gun at people. Officer Bender arrived on the scene within two (2) minutes of the dispatch. Officer Bender was given the description of a black male wearing glasses and dark clothing. Initially when Officer Bender got to the intersection, he did not see anyone in the area. Officer Bender made a U-turn, at which time on his left-hand side on the northwest corner he saw a male matching the description speaking to a female. Officer Bender pulled his marked car off to the side of the road.
>
> When [a]ppellant saw Officer Bender, he ended his conversation with the female and began walking away at a fast pace. Officer Bender got out of his car and told [a]ppellant to stop and that he needed to talk to him. Appellant told Officer Bender that he did not have anything to say to him and began walking away faster. Officer Bender again said to [a]ppellant that he needed to speak with him. Appellant then took off running. Officer Bender notified units that he was east on Calder on the south side of the street. Officer Bender briefly lost sight of [a]ppellant but then encountered him again when [a]ppellant turned and began running towards Officer Bender and away from responding officers. Officer Bender had his gun pointed in [a]ppellant's direction and told [a]ppellant to get on the ground. Appellant would not get on the

---

[2] The trial court also heard appellant's motion to suppress.

> ground. Appellant tried to run past Officer Bender. Officer Bender caught [a]ppellant on his shoulder and tackled him to the ground.
>
> Once [a]ppellant was on the ground, Officer Bender told him to put his hands behind his back, but [a]ppellant refused to do so. Officer Bender began pulling on [a]ppellant's arms and [a]ppellant resisted this. Officers were eventually able to handcuff [a]ppellant. Officer Bender then rolled [a]ppellant onto his left side to pat him down. Nothing was found on his left side. Officer Bender then rolled [a]ppellant onto his right side. As soon as this happened, [a]ppellant said that he did not consent to a search. Officer felt what he knew to be a small firearm in [a]ppellant's right front pocket.
>
> Officer Bender also testified that the area in question had been becoming increasingly dangerous with calls for drug use and shots fired. So much so that the Vice Unit and the Street Crimes Unit were heavily investigating the area.

Trial court Rule 1925(a) opinion, 2/18/20 at 2-3 (citations to notes of testimony omitted). Based on the evidence adduced at the hearing, the trial court concluded:

> I think it was very clear from the 911 dispatch and concerned citizen that he gave a very descriptive picture of who was waving the gun, and when the officer arrived, it fit the description perfectly, and I find that the evidence is sufficient, and we are not suppressing anything.

Notes of testimony, 1/17/18 at 18. Appellant's motion to suppress evidence was denied.

Following the denial of his suppression motion, appellant proceeded to a bench trial. Appellant was found guilty of the above-listed charges and

sentence was imposed on May 29, 2018. An untimely post-sentence motion was filed on June 11, 2018. The trial court denied the motion on June 19, 2018. Appellant filed a **pro se** petition pursuant to the Post Conviction Relief Act[3] ("PCRA") on January 31, 2019. Counsel was appointed. Appellant's PCRA petition was granted on November 19, 2019, and his appellate rights were reinstated **nunc pro tunc**. Appellant filed a timely notice of appeal. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. Thereafter, the trial court filed its Rule 1925(a) opinion.

The sole issue raised by appellant on appeal is as follows:

> Did the trial court err by failing to suppress the evidence recovered where the officer lacked reasonable suspicion to stop [a]ppellant?

Appellant's brief at 8 (bolding omitted).

Appellant contends the trial court erred in denying his motion to suppress because the police lacked reasonable suspicion to stop him, had an insufficient basis to pat him down, and had an inadequate basis to search his person. (**See id**. at 13.)

Our standard of review, when addressing a challenge to a trial court's denial of a suppression motion,

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-784 (Pa.Super. 2012), quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361-362 (Pa.Super. 2012) (citations omitted).

Under our Fourth Amendment jurisprudence, three levels of interactions between citizens and police officers exist: a mere encounter, an investigative detention, and a custodial detention or an arrest. *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012), *appeal denied*, 50 A.3d 124 (Pa. 2012) (citation omitted).

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

J. S31032/20

***Commonwealth v. Ranson***, 103 A.3d 73, 76-77 (Pa.Super. 2014) (citations

omitted), ***appeal denied***, 117 A.3d 296 (Pa. 2015).

In determining whether an investigative detention is constitutionally

sound, we apply the following standard:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

***Commonwealth v. Foglia***, 979 A.2d 357, 360 (Pa.Super. 2009) (citations

and quotation marks omitted), ***appeal denied***, 990 A.2d 727 (Pa. 2010).

> Police cannot initiate a detention based solely upon an anonymous tip that a person matching the defendant's description in a specified location is carrying a gun. However, if the person described by the tipster engages in other suspicious behavior, such as flight, reasonable suspicion justifying an investigatory detention is present. Evasive behavior also is relevant in the reasonable-suspicion mix. Moreover, whether the defendant was located in a high crime area similarly supports the existence of reasonable suspicion. Finally if a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy

- 6 -

> of a protective weapons search of the location where
> the hand movements occurred.

*Id.* at 360-361 (citations omitted). "Mere presence near a high crime area or in the vicinity of a recently reported crime[] is not enough to warrant a ***Terry***[4] stop." ***Commonwealth v Kearney***, 601 A.2d 346, 348 (Pa.Super. 1992) (citations omitted). Further,

> the mere fact that a person "quickens his pace" upon
> being observed by police and starts to run when a
> police officer begins to chase him does not give rise to
> a reasonable belief that criminal activity is afoot, and
> is therefore insufficient to justify even a ***Terry*** stop,
> absent some other factor which would give rise to
> criminal conduct.

***Commonwealth v. Martinez***, 588 A.2d 513, 514 (Pa.Super. 1991), ***appeal denied***, 608 A.2d 29 (Pa. 1992). Rather, a police officer "must observe irregular behavior before he initiates a stop and, concurrently to his observation, he must hold a belief that criminal activity is afoot." ***Id.*** (citations omitted).

Here, the record clearly establishes that Officer Bender responded to a radio call, based on a tip from an identified caller, that a black male, wearing glasses and dark clothing, was waving a gun at others in the area of Second and Verbeke Streets. (Notes of testimony, 1/17/18 at 6.) Although no one was at the scene when he arrived, when the officer turned around, he saw a man, matching the actor's description, conversing with a woman. (***Id.*** at 7.)

---

[4] ***Terry v. Ohio***, 392 U.S. 1 (1968).

Before the officer even exited his vehicle, appellant saw the officer, stopped the conversation, and began walking away at a fast pace. (*Id.*) When Officer Bender asked appellant to stop, because he needed to talk to him, appellant replied that he had nothing to say and continued walking a bit faster. (*Id.*) When asked to stop a second time, appellant took off running. (*Id.*) Although the area was not a high crime area, in recent months it had become more dangerous, with the police receiving calls about drug use, shots fired, and the like. (*Id.* at 10.) Assessing the totality of the circumstances, Officer Bender was justified in suspecting that criminal activity was afoot. *See In re D.M.*, 781 A.2d 1161 (Pa. 2001) (finding reasonable suspicion based on anonymous tip describing a man with a gun, defendant matching description and defendant's flight when officers approached him).

Our review of the record supports the trial court's findings of fact and Officer Bender articulated sufficient facts to justify stopping the appellant, and conducting a pat down, based on reasonable suspicion that criminal activity was afoot. Accordingly, we discern no legal error on the part of the trial court in denying appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>09/25/2020</u>